**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 5 OF NEW JERSEY PENSION & ANNUITY FUNDS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHANREE CONSTRUCTION CO., INC.,<br><br>Defendant. | Civ. No. 12-3897 (FLW)<br><br>**MEMORANDUM OPINION** |

Presently before the Court is a motion by Defendant Chanree Construction Co., Inc. ("Chanree") to dismiss the complaint of Plaintiff Bricklayers and Allied Craftworkers Local 5 of New Jersey Pension & Annuity Funds ("Bricklayers"), Trustees of the B.A.C. Local 4 Pension and Annuity Funds, Richard E. Tolson as Trustee and Fiduciary of the Bricklayers and Allied Craftworkers Local 5 of New Jersey Pension & Annuity Funds and as Administrator of BAC Administrative District Council of New Jersey, Trustees of the New Jersey BM&P Apprentice and Education Fund, Trustees of the Bricklayers & Trowel Trades International Pension Fund, and Trustees of the International Masonry Institute (collectively, "Plaintiffs"). The complaint asserts an unpaid pension contribution claim pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132 and § 1145, respectively, as well as Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. The Court held oral argument on the motion on November 28, 2012. For the following reasons, Defendant's motion to dismiss is granted and Plaintiffs are granted leave to file an amended complaint.

**BACKGROUND**

Plaintiffs are employee benefit plans and Chanree is a general contractor that hires employee-laborers whose pensions are administered by Plaintiffs. According to Plaintiff's Complaint, Chanree is party to a collective bargaining agreement ("CBA") with the International Union of Bricklayers and Allied Craftworkers/Administrative District Council of New Jersey, Local Union Nos. 2, 4, &5 under which Chanree agreed to pay certain fringe benefit contributions related to work by laborers on the Sayreville Life Long Learning Center Project in Sayreville, New Jersey ("the Project"). Palmer Construction NJ, Inc. ("Palmer") worked as a subcontractor of Chanree's on the Project. The CBA directs signatories, such as Chanree, to pay fringe benefits on a monthly basis. *See* Def. Mov. Br., Exh. E. It, further, provides that general contractors, like Chanree, "agree[ ] not to sublet, assign, or transfer any work covered by [the CBA] to be performed at the site of a construction project . . . except where the subcontractor subscribes and agrees in writing to be bound by the full terms of the [CBA] and complies with all of the terms and conditions of the [CBA]." *Id.*, Art. XVI (p. 26). Plaintiff does not allege that Palmer agreed to be bound by the CBA.

On March 4, 2010, Bricklayers[1] filed a suit in this Court, that was assigned to the Honorable Anne E. Thompson, U.S.D.J. in order to recover payment of the fringe benefits. This suit originally named Palmer and Palmer's principal—Carmine Mazza—as the sole defendants. *See Bricklayers v. Palmer, et al.*, Civil Action No. 10-1123 (AET). Palmer subsequently added Chanree as a third-party defendant, alleging that "because [Bricklayers] entered into a joint check agreement with Palmer and Chanree . . ., in which the Plaintiff was also a signatory, both Chanree and Palmer are

---

[1] This earlier suit was filed in Bricklayers name only, and not in the name of the other Plaintiffs in this suit. However, some of the Plaintiffs in this suit executed the settlement agreements, described herein, that were reached in the Bricklayers' suit.

liable for the[ ] delinquent payments." Civ. Action No. 10-1123, Def. Answ. and Third-Party Compl., ¶ 2. Thereafter, Bricklayers moved to amend to add Chanree as a defendant, asserting that "both Palmer and Chanree are liable for these delinquent contributions." *Id.*, Afft. in Supp. of Mot. for Leave to Amend Compl. (Docket Entry No. 9-1).

While the suit before Judge Thompson was pending, Bricklayers engaged in settlement negotiations with Palmer and Chanree. On or about April 20, 2010, these two parties entered into a structured settlement agreement that obligated Palmer to pay the delinquent contributions. When Palmer failed to make all of its scheduled payments, Plaintiffs engaged in further settlement negotiations—this time, with both Palmer and Chanree. A second settlement agreement between Palmer and Plaintiffs was executed on June 21, 2010. This agreement obligated Chanree to pay $300,000, although Chanree was not a signatory to the agreement. *See* Def. Mov. Br., Exh. D.

The case was then dismissed as settled on June 23, 2010, although the Judge reserved jurisdiction over the suit for the purpose of enforcing the settlement. Chanree paid its $300,000, however, Palmer failed to satisfy its obligations under the second settlement agreement. *See* Compl., ¶ 22. Hence, on November 23, 2010, Bricklayers filed a motion to enforce the settlement against Palmer and Mazza. The Judge ruled on the motion on January 18, 2011, granting Bricklayers' motion to enforce against those two parties, and ordering them to pay $924,537.99 in damages. Around six months later, in August of 2011, Mazza filed for Chapter 7 bankruptcy and, during his bankruptcy proceeding, he testified that Palmer was no longer in business. *Id.* at ¶ 24-25. Thereafter, Bricklayers' counsel sought to collect the past due balance from Chanree, but to no avail. Plaintiffs now bring the instant action to collect the unpaid contributions.

**STANDARD OF REVIEW**

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Philips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). As the Third Circuit has stated, "a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Id.* at 234 (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 547 (2007)) (internal quotation marks omitted). In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Moreover, in deciding a motion to dismiss, the Court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of Plaintiff's claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n. 3 (3d Cir. 2004). Hence the Court may consider the judicial records in Bricklayers' prior suit, as well as the CBA and the other exhibits attached to the parties' papers that form the basis of Plaintiffs' unpaid contributions claim.

**DISCUSSION**

Pursuant to section 515 of ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms . . . of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. ¶ 1145. The purpose underlying this fringe benefit

funding requirement is "to protect employees from the inequity of underfunded employee benefit plans that cannot deliver on promises made." *Gastronomical Workers Union Local 610 v. Dorado Beach Hotel Corp.*, 476 F.Supp.2d 99 (D.P.R. 2007) (citing S.Rep. No. 93-127, at 4846 (1974)) ("[A] major issue in private pension plans relates to the adequacy of plan funding.... The Promise and commitment of a pension can be fulfilled only when funds are available to pay the employee participant what is owed to him. Without adequate funding, a promise of a pension which may be illusory and empty."). *See also Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs*, 580 F.3d 185, 194 (3d Cir. 2009) ("ERISA was enacted to ensure that pension funds will be adequately funded . . . and that employees who are relying on those funds will be protected.") (internal quotation marks omitted).

With respect to the interpretation of collective bargaining agreements in the ERISA context, the Third Circuit has explained what law governs such determinations:

> Although federal law governs the construction of collective bargaining agreements, traditional contract principles apply when not inconsistent with federal labor law. Under these principles, whether a contract term is clear or ambiguous is a question of law for the court and is thus subject to plenary review on appeal. "A [contract] term is ambiguous if it is susceptible to reasonable alternative interpretations." In determining whether a term is ambiguous, we must consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation. Extrinsic evidence may include the structure of the contract, the bargaining history, and conduct of the parties that reflects their understanding of the contract's meaning.

*Einhorn v. Fleming Foods of Pennsylvania, Inc.*, 258 F.3d 192, 194-95 (3d Cir. 2001) (internal citations omitted).

While under state law contract interpretation principles courts are often advised against considering extrinsic evidence in determining whether a contract is ambiguous, federal common law

supplies a different rule here. As the Third Circuit has made clear, "in deciding whether a CBA is ambiguous [and b]efore making a finding concerning the existence or absence of ambiguity, we consider the contract language, the meanings suggested by counsel, *and the extrinsic evidence offered in support of each interpretation*." *IBEW Local Union No. 102 v. Star-Lo Elec., Inc.*, 444 Fed.Appx. 603, 607-08 (3d Cir. 2011) (quoting *Teamsters Indus. Emp. Welfare Fund, et al. v. Rolls–Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir. 1993)) (emphasis added).

Relatedly, "if a collective bargaining agreement is silent or otherwise ambiguous regarding a particular term, proof of mutual acceptance of a past practice may be relevant to establish that the term is to be implied in the agreement." Richard A. Lord, *Extrinsic Evidence*, 20 Williston on Contracts § 55:23 (4th ed.). This rule is attributed to the Supreme Court's statement over fifty-years ago in *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581-582 (1960) that "[t]he labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it." *See Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123 (3d Cir. 1969) (quoting same). Third Circuit cases continue to recognize the viability of this doctrine, noting that terms may be implied into a CBA based upon past practice, *see, e.g., Conroy v. Township of Lower Merion*, 77 Fed.Appx. 556, 560 (3d Cir. 2003) ("[P]ast practice can be considered an implied term of the CBA ....") (citing *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 311-12, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989)), unless the CBA expressly forbids reliance on such practices. *See, e.g., Armstrong County Memorial Hosp. v. United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Service Workers Intern. Union*, 419 Fed.Appx. 217, 222 (3d Cir. 2011) (reversing arbitrator's reliance on prior

practices where CBA provided that "management rights were not limited by 'existing or prior practices'").

Courts outside this circuit have also implied CBA terms based upon a party's past practice. *See, e.g., Cruz-Martinez v. Department of Homeland Sec.*, 410 F.3d 1366 (Fed. 2005) (implying CBA provision that permitted arbitrator to close out all grievances upon which the union had not taken any action in one full year); *Bonnell/Tredegar Industries, Inc. v. N.L.R.B.*, 46 F.3d 339 (4th Cir. 1995) (implying Christmas bonus formula into CBA based on employer's prior, long standing conduct). In this regard, the the Fourth Circuit has noted:

> "[C]ollective bargaining agreements may include implied as well as express terms." *Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 311, 109 S.Ct. 2477, 2485, 105 L.Ed.2d 250 (1989); *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1198 (7th Cir. 1987) (Posner, J.). An employer's established past practice can become an implied term of a collective bargaining agreement. *See, e.g., Railway Labor Executives v. Norfolk & Western Ry. Co.*, 833 F.2d 700, 705 (7th Cir. 1987) ( "parties' collective agreement ... includes both the specific terms set forth in the written agreement and any well established practices that constitute a 'course of dealing' between the carrier and employees") (footnote omitted); *Brotherhood of Maintenance of Way Employees v. Chicago & North Western Transp. Co.*, 827 F.2d 330, 334 (8th Cir. 1987) (rule subjecting workers to discipline for possession, use, or sale of illegal drugs, which was not an express term of the collective bargaining agreement, "by virtue of the parties' longstanding and recognized custom and practice, has become an implied term in the agreement of the parties"), *cert. denied*, 485 U.S. 988, 108 S.Ct. 1291, 99 L.Ed.2d 502 (1988).

*Bonnell*, 46 F.3d at 344 (internal citations omitted). The Eighth Circuit has further reasoned that "[p]ast practices rise to the level of an implied agreement when they have 'ripened into an established and recognized custom between the parties.'" *Id.* (quoting *Brotherhood Ry. Carmen v. Missouri Pacific Ry. Co.*, 944 F.2d 1422, 1429 (8th Cir. 1991) (quoting *Alton & S. Lodge No. 306*

*v. Alton & S. Ry.*, 849 F.2d 1111, 1114 (8th Cir. 1988), cert. denied, 492 U.S. 905, 109 S.Ct. 3214, 106 L.Ed.2d 565 (1989)).

With this legal backdrop in mind, I turn to the parties' arguments here. Defendant argues that it is not legally responsible for Palmer's deficiencies because there is no express language in the CBA making it secondarily liable therefor. Plaintiff acknowledges that there no express langauge in the agreement to this effect. Indeed, the only language in the CBA addressing subcontractor contributions is the prohibition against hiring subcontractors that do not agree to be bound to the CBA: "[Chanree] agrees not to sublet, assign, or transfer any work covered by [the CBA] to be performed at the site of a construction project . . . except where the subcontractor subscribes and agrees in writing to be bound by the full terms of the [CBA] and complies with all of the terms and conditions of the [CBA]." *Id.*, Art. XVI.

Defendant cites to *Schoemehl v. Renaissance Elec. Co., Inc.*, 334 Fed.Appx. 772, 777 (8th Cir. 2009), for the proposition that a general contractor may not be held liable for a subcontractor's failure to pay fringe benefit contributions unless there is express language in the CBA imposing a direct or guarantee obligation on the general contractor. That court reasoned:

> The Funds cite to cases where a general contractor was held liable, either directly or as a guarantor, for contributions accrued by the employees of its subcontractors. However, in each of those cases, the contract in question created that obligation on its face. See, e.g., *Walsh v. Schlecht*, 429 U.S. 401, 406, 97 S.Ct. 679, 50 L.Ed.2d 641 (1977) (contract stated that general contractor "shall be liable" for payment into fringe benefit funds). Unlike the contracts in those cases, however, the PLA creates neither a direct nor a guarantee obligation in Hunt or Daktronics to pay the contributions on behalf of Renaissance's employees.

*Id.* It is true that the cases researched by this Court that imposed secondary liability each relied upon express language in the CBA. *See, e.g., Chicago Dist. Council of Carpenters Pension Fund v. Faith*

*Builders, Inc*., Civ. Action No. 00 C 1036, 2001 WL 99839, *1-3 (N.D.Ill. Jan. 30, 2001); *Mason Tenders v. Abatement Intern./Advatex Ass'n, Inc.*, 82 F.Supp.2d 175 (S.D.N.Y. 2000) ("Any Employer who subcontracts any such work *shall be responsible for the payment of* wages, *fringe benefits fund contributions*, and working dues check-offs *by such subcontractor*.") (emphasis added); *Laborers' Pension Fund v. Concrete Structures of The Midwest, Inc.*, 999 F.2d 1209 (7th Cir. 1993); *Orange Belt Dist. Council of Painters No. 48 v. Maloney Specialties, Inc.*, 639 F.2d 487 (9th Cir. 1980).

But these cases do not prove the inverse point—that courts have imposed liability in the face of express language speaks nothing about how those courts would respond where no such language exists. In my view, this case is better analyzed under the line of cases addressing implied CBA terms. In this connection, at oral argument, Plaintiff's Counsel recounted instances in the parties' longstanding relationship in which Chanree behaved as if it was secondarily liable for Palmer's and other of its subcontractors' unpaid pension contributions. Such conduct, if true, could suggest that this is a case in which implying into the CBA general contractor liability for subcontractor contributions would be appropriate. As the aforesaid case law suggests, it is quite possible to imply terms into a CBA where there has been a long-standing practice.

The problem for Plaintiff here, however, is that there is no reference to these prior dealings in the complaint, and Plaintiffs' Counsel's representations at oral argument certainly do not suffice to amend the complaint. Accordingly, the Court finds it appropriate to allow Plaintiff to amend its complaint to incorporate more specific allegations regarding Chanree's past practices. In this regard, the Court notes that Plaintiffs' allegations about Chanree's conduct in the prior

litigation[2]—such as its willing participation in settlement negotiations and agreement to pay $300,000 toward a settlement for an obligation it now argues did not lie under the CBA—may also be relevant to the extent that its conduct is reflective of a longstanding practice that has "ripened into an established and recognized custom between the parties." *Bonnell*, 46 F.3d at 344 (internal quotation marks omitted).

Finally, the Court notes that paragraph 27 of the current complaint makes reference to non-Palmer unpaid fund contributions for which Chanree is allegedly liable. Specifically, the paragraph alleges: "In addition, Defendant Chanree has become delinquent to Plaintiffs the Local 5 Pension and Annuity Funds for work performed by members of Bricklayers and Allied Craftworkers Local 5 on projects that did not involve Palmer." Plaintiff may re-incorporate this allegation in its amended complaint, however, Plaintiffs are advised to incorporate more detail regarding to which project these contributions relate, and whether the contributions are Chanree's own or that of a different subcontractor. Otherwise, Plaintiff would likely face a motion for a more definite statement with respect to these non-Palmer contributions.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is granted. Plaintiff is, further, granted leave to amend its complaint within 15 days in accordance with the strictures of this Opinion. An Order will follow.

---

[2] The Court notes that Chanree has not invoked any preclusion principles in this case, hence I express no opinion on whether *res judicata* or collateral estoppel doctrines should apply regarding any prior litigation between the parties.

Dated: November 29, 2012

/s/ Freda L. Wolfson
FREDA L. WOLFSON, U.S.D.J.