UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BRICKLAYERS AND ALLIED
CRAFTWORKERS LOCAL 5 OF
NEW JERSEY PENSION & ANNUITY
FUNDS, et al.,

        Plaintiffs,

v.

CHANREE CONSTRUCTION CO., INC.

        Defendant.

Civil Action No. 12-3897 (FLW)(LHG)

**OPINION**

**WOLFSON, United States District Judge:**

    This matter comes before the Court by way of a Consolidated Motion by Defendant, Chanree Construction Company, Incorporated ("Defendant" or "Chanree"), for Reconsideration and to Dismiss the Amended Complaint of Bricklayers and Allied Craftworkers Local 5 of New Jersey Pension & Annuity Funds, et al. ("Plaintiffs"). Defendant seeks reconsideration of the Court's November 29, 2012, Opinion and Order granting Plaintiffs leave to amend their complaint to allege that their Collective Bargaining Agreement (CBA) with Defendant contained an implied secondary liability term, relying exclusively on evidence of Defendant's past practices in handling CBAs with Plaintiffs. In that Opinion and Order, the Court also granted Defendant's Motion to Dismiss Plaintiffs' original Complaint. For the reasons that follow, the Court grants Defendant's instant Motion for Reconsideration, vacates the Court's November 29, 2012, grant of leave to Plaintiffs to file an Amended Complaint, and, accordingly, denies as moot Defendant's Motion to Dismiss the Amended Complaint.

I. BACKGROUND AND PROCEDURAL HISTORY

The Court will not now belabor the facts which are familiar to the parties. A more detailed recitation of the underlying dispute can be found in the Court's November 29, 2012, Opinion. For the purposes of the present Motion for Reconsideration, it suffices to recall that Plaintiffs initiated suit before Judge Thompson on March 4, 2010, in order to recover unpaid fringe benefit contributions they alleged were owed to their members by their employer Palmer. During the pendency of the suit, Plaintiffs and Palmer entered into two rounds of settlement negotiations, in which Defendant Chanree participated. The second and final settlement agreement that was reached as a result of those negotiations was executed on June 21, 2010, and obligated Chanree to pay Plaintiffs $300,000, even though Chanree was not a signatory to the agreement. The only signatory to the agreement other than Plaintiffs was Palmer, who was thereby obligated to pay the balance of the amount due.

The case was dismissed as settled on June 23, 2010, with the court reserving jurisdiction over the suit for the purpose of enforcing the settlement agreement. Accordingly, on January 18, 2011, the court, on Plaintiffs' motion, ordered Palmer to pay the $924,537.99 unpaid balance of the settlement. Palmer subsequently went out of business, and its principal, Carmine Mazza, declared bankruptcy without complying with the court's order to pay the balance of the settlement. Plaintiffs thereafter brought an action against Chanree, before me, to collect the unpaid balance.

Defendant Chanree moved to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6). On November 29, 2012, this Court issued an Opinion and Order granting Defendant's Motion, but further granting Plaintiffs leave to amend their Complaint to allege that Chanree

became liable for the unpaid balance of the settlement to which it was not a signatory by way of its past practices in handling CBAs to which Chanree, Palmer, and Plaintiffs were parties. Shortly thereafter, on December 5, 2012, Defendant Chanree filed a Motion for Leave to File a Consolidated Motion for Reconsideration and Motion to Dismiss. Before briefing or consideration of Defendant's Motion, Plaintiffs filed their Amended Complaint on December 14, 2012. Defendant responded within the week with a Motion for Leave to Petition the Third Circuit for Permission to File Interlocutory Appeal under 28 U.S.C. 1292(b). After Defendant's motions had been fully briefed, the Court, on April 30, 2013, issued an Order granting Defendant's request to file a Consolidated Motion and denying as moot Defendant's Motion for Leave to Petition the Third Circuit, pending the Court's resolution of the Defendant's Consolidated Motion. The Court now considers Defendant's Consolidated Motion.

II. STANDARD OF REVIEW

While the Federal Rules of Civil Procedure do not expressly recognize motions for "reconsideration," *United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999), the Local Civil Rules governing the District of New Jersey do provide for such review. *See* Light, N.J. Federal Practice Rules, cmt. 6 to L. Civ. R. 7.1 (Gann 2008). Local Civil Rule 7.1(i) states that a motion for reconsideration "setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked" may be filed within ten (10) business days after entry of an order. L. Civ. R. 7 .1(i).2 The motion may not be used to relitigate old matters or argue new matters that could have been raised before the original

decision was reached. *See P. Schoenfeld Asset. Mgmt., L.L.C. v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001).

"The purpose of a motion for reconsideration is to correct manifest errors of law or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied* 476 U.S. 1171, 106 S. Ct. 2895, 90 L.Ed.2d 982 (1986); *Tecchio v. United States ex rel. Meola*, No. 03–1529, 2004 WL 2827899, at *1 (D.N.J. Oct.24, 2003) (quoting same). The granting of a motion for reconsideration is an extraordinary remedy and should be sparingly given by the court. *Connolly v. Mitsui O. S.K. Lines (America), Inc.*, No. 04–5127, 2010 WL 715775, at *1 (D.N.J. Mar.1 2010) (citations omitted). Reconsideration is not appropriate where the motion raises only a party's disagreement with the court's initial decision. *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 162 (D.N.J. 1988).

There are three grounds for granting a motion for reconsideration: (1) an intervening change in controlling law has occurred; (2) evidence not previously available has become available; (3) it is necessary to correct a clear error of law or prevent manifest injustice. *See Carmichael v. Everson*, No. 03–4787, 2004 WL 1587894, at *1 (D.N.J. May 21, 2004); *Brackett v. Ashcroft*, No. 03–3988, 2003 WL 22303078, at *2 (D.N.J. Oct.7, 2003). In sum, it is improper on a motion for reconsideration to "ask the Court to rethink what it ha[s] already thought through—rightly or wrongly." *Oritani Sav. & Loan Ass'n v. Fidelity & Deposite Co.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990) (citations omitted). "The only proper ground for granting a motion for reconsideration, therefore, is that the matters or decisions overlooked, if considered by the court, might reasonably have altered the result reached ...." *G–69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990) (quoting *New York Guardian Mortgage Corp. v. Cleland*, 473 F. Supp. 409, 420 (S.D.N.Y. 1979)) (internal quotation marks omitted).

III. DISCUSSION

In briefing, Defendant accurately paraphrased this Court's holding in the November 29 Opinion, "[t]he Court found that a cause of action may be maintained based on an implied CBA term –and in the absence of an express CBA term –which could obligate a signatory contractor for a delinquency in pension fund contributions of its subcontractor." [Defendant's Brief in Support, 7]. Defendant now argues that this holding constitutes a clear error of law, directing the Court's attention to the absence of any precedent, controlling or otherwise, suggesting that such a cause of action exists, and further submitting that none of the authority identified in the Opinion supports the Court's conclusion. *Id.* at 8. Notably, neither Defendant in its briefing, nor Plaintiffs in their Opposition, cite to controlling precedents within this Circuit dictating the reconsideration of this Court's Opinion or otherwise indicating applicable law overlooked by the Court. I have, however, identified such precedents and revise my decision accordingly.[1]

---

[1] While the Court was mistaken in its conclusion that Plaintiffs could plead a cause of action utilizing evidence of past practice to introduce a new term into an otherwise complete and unambiguous CBA, the November 29 decision correctly reflects the liberal standard in this Circuit for the use of extrinsic evidence to determine *whether a CBA is ambiguous* in the first instance. *See Acosta v. HOVENSA LLC*, 429 Fed. Appx. 297, 300 (3d Cir. 2013) (quoting *Int'l Union, United Mine Workers of Am. V. Rancho Trucking Co.*, 897 F.2d 1248, 1254 (3d Cir. 1990) ("[C]ollective bargaining agreements commonly include implied terms and . . . the parties' practice is important in determining if the position of one of them is even arguably justified."). *See also Rancho Trucking*, 897 F.2d at 1254:
> A collective bargaining agreement is not an ordinary contract for the purchase of goods and services, nor is it governed by the same old common-law concepts, which control such private contracts. It is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. The collective agreement covers the whole employment relationship. It calls into being a new common law –the common law of a particular industry or a particular plant. In order to interpret such an agreement it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements.

As explained, *infra*, the Court applied this standard for determining whether terms of a CBA are ambiguous to the very different question of whether an implied term may be added to an otherwise unambiguous and complete CBA. In doing so, I overlooked binding precedent.

While there has been no intervening change in the law governing the interpretation of CBAs in this jurisdiction, a Third Circuit decision issued after this Court's November 29, 2012, Order makes clear that the parties in their briefing, and this Court in its Opinion and Order, overlooked controlling precedent requiring the dismissal of Plaintiffs' Complaint and foreclosing the basis on which this Court allowed Plaintiffs to amend. In *Akers Nat. Roll Co. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 712 F.3d 155, 161 (3d Cir. 2013), the Third Circuit reaffirmed in no uncertain terms that evidence of past practice cannot be used by a plaintiff to introduce ambiguity into an unambiguous CBA. ("This Court has stated that extrinsic evidence of past practice could be admitted, if at all, only to resolve an ambiguity in the CBA.")(internal citations omitted). The *Akers* court went on to reiterate the standard for interpreting CBAs – to identify implied terms – which was adopted in this Circuit over a decade ago:

> Although extrinsic evidence is admissible to show that a written contract which looks clear is actually ambiguous, perhaps because the parties were using words in a special sense, . . . there must be either contractual language on which to hang the label of ambiguous or some yawning void . . . that cries out for an implied term. *Extrinsic evidence should not be used to add terms to a contract that is plausibly complete without them*.

*Id.* at 161-62 (quoting *U.A.W. Local 1697 v. Skinner Engine Co.*, 188 F.3d 130, 146 (3d Cir. 1999)) (emphasis added). *Accord Quick v. N.L.R.B.*, 245 F.3d 231, 247-48 (3d Cir. 2001).[2]

---

[2] The reasoning of the *U.A.W.* Court also sheds lights on this Court's misstep in the present case.
> [A]lthough extrinsic evidence can be used to show that a contract is ambiguous ... extrinsic evidence cannot be used to create an ambiguity.... There is no contradiction here. The party claiming that a contract is ambiguous must first convince the judge that this is the case ... and must produce objective facts, not subjective and self-serving testimony, to show that a contract which looks clear on its face is actually ambiguous.... Just as the court must determine whether a contract is ambiguous, so too the court must determine whether the extrinsic evidence offered in a given case interprets or contradicts the contract.

In reaching our November 29 decision, this Court relied upon the principal that "if a collective bargaining agreement is *silent or otherwise ambiguous* regarding a particular term, proof of mutual acceptance of a past practice may be relevant to establish that the term is to be implied in the agreement." *Bricklayers & Allied Craftworkers Local 5 of New Jersey Pension & Annuity Funds v. Chanree Const. Co., Inc.*, Civ. 12-3897 FLW, 2012 WL 5989451, at *4 (D.N.J. Nov. 29, 2012) (emphasis added). In doing so, I overlooked the holding of *U.A.W.*, subsequently reaffirmed in *Akers*, that mere *silence* concerning secondary liability in the CBA is insufficient to allow for the introduction of evidence of past practice "to add" a secondary liability term to the CBA agreement with Chanree – "a contract that [wa]s plausibly complete without" the secondary liability term. For Plaintiffs to assert such a cause of action, more than silence in the CBA and evidence of past practice alone was required. The Court would have had to find either ambiguous contract language or a "yawning void" demanding an implied term. In dismissing Plaintiffs' original Complaint, the Court found neither.

Here, as recognized in the November 29 decision, Plaintiffs have presented no language in the CBA "on which to hang the label of ambiguous." *See Bricklayers*, 2012 WL 5989451 at *5 ("Defendant argues that it is not legally responsible for Palmer's deficiencies because there is no express language in the CBA making it secondarily liable therefor. Plaintiff acknowledges that there [is] no express language in the agreement to his effect. Indeed, the only language in the CBA addressing subcontractor contributions is the prohibition against hiring subcontractors that do not agree to be bound to the CBA.") (referencing CBA, Art. XVI); *See also id.* ("It is true that

---

*U.A.W.*, 188 F.3d at 145. The November 29 decision allowed the Plaintiffs to amend the complaint to assert a cause of action seeking to use evidence of past practice to "create an ambiguity" in the CBA with Chanree, namely that a secondary liability term was implied, although there was no ambiguous language or obvious incompleteness within the CBA suggesting as much. This is precisely what the Circuit Court found to be impermissible in *U.A.W.*, *Quick*, and *Akers*.

that the cases researched by this Court that imposed secondary liability each relied upon express language in the CBA."). In sum, both parties agree that there was no ambiguous language within the CBA concerning secondary liability, and the Court found no cases in which actions were allowed to proceed without such language.

Similarly, while this Court found that the CBA was silent concerning Chanree's secondary liability, the mere absence of a term from the CBA does not equate to the "yawning void" required by the Circuit for the admission of evidence of past practices to create an implied term. *See U.A.W.*, 188 F.3d at 146 (explaining "yawning void" as an ambiguity in terms or absence of terms that renders the CBA incomplete) ("In the case at bar, there is no 'contractual language on which to hang the label of ambiguous,' and there is no 'yawning void' crying out for an implied term. The [disputed] phrases [in the CBA] . . . are simply not susceptible to more than one reasonable interpretation, and they do not somehow *render the CBAs incomplete or ambiguous*.") (emphasis added). This case is about who was required to pay pension contributions. The CBA to which Chanree and Plaintiffs were signatories expressly obligates Chanree to remit fringe benefit contributions to Plaintiffs for all hours worked by Chanree's employees. [Original Complaint, Exhibit A]. This express term, which indisputably makes no mention of secondary liability for the contributions owed by Palmer, far from opening a "yawning void" in the contract, appears on its face to leave the allocation of liability well settled, and could only be contradicted and disturbed by the introduction of extrinsic evidence of past practice. *See Bricklayers*, 2012 WL 5989451 at *5.

With neither potentially ambiguous contract language concerning secondary liability nor a "yawning void" in the CBA "crying out" for an implied secondary liability term, there simply was no potential cause of action available to Plaintiffs based upon Chanree's past practices in the

handling of CBAs with which to amend their Complaint. Accordingly, the Court's November 29 decision granting Plaintiffs leave to amend on that basis was in error and is hereby vacated.

CONCLUSION

For the foregoing reasons, Defendant Chanree's Motion for Reconsideration is granted and the portion of this Court's November 29, 2012, decision granting Plaintiffs leave to file an Amended Complaint is vacated. Because the Court has vacated its earlier grant to Plaintiffs of leave to amend, the Amended Complaint shall be stricken and Defendant's Motion to Dismiss the Amended Complaint is denied as moot.

Dated:  12/12/2013   /s/ Freda L. Wolfson  
Hon. Freda L. Wolfson, U.S.D.J.